14676 O'Laughlin. I hope I'm pronouncing that right. O'Laughlin versus Palm Beach County. We have Mr. Amlong here for O'Laughlin and tell me if I'm pronouncing this right. Vizd? Vizd? Crushed it. Here for the appellee. Very good. All right so you may proceed whenever you're ready Mr. Amlong. Good morning and may it please the court. Your honors, I don't want to quote cases as you just said. However, I do want to quote one case from the Old Fifth Circuit of Porter v. Califano where it says it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office. That's precisely what happened here. It is absurd. Captain O'Laughlin was running for president of the Union. Union called this other captain basically a crook because he was the first vice president of the Firefighters Union. The guy that goes in there and represents firefighters in disciplinary disputes, in collective bargaining, and who is Now to help him fulfill that duty, firefighters donate their time. They donate it to what's called a union time pool and the county gives the union officers time off to do union business. You don't do union business on Thanksgiving. You don't do union business on Christmas. During his campaign, which was a reform campaign . . . Can I ask you a question just so we can get to the nature of the test that I think we're applying here? The First Amendment can be a little frustrating because there's, as I've learned this week, we've all had multiple First Amendment cases and it just seems like there's so much doctrine and so many factors, but we've got this Pickering test that we've got to apply. On the first factor, the public nature of the speech, what is that? Can we just stop the clock for a second? I actually saw construction workers in the hallway. It's construction? Okay. If it's not too disruptive to you, is it okay if we proceed? I'll speak louder. That's okay. In any event, with respect to the first factor, the district court says, look, there's no net loss in terms of funds to the government. What's your response to the district court's observation in that respect? I would be less concerned about the net loss of two days pay to the government than I am concerned about the gross loss to the members of the union of the fiduciary duty that this guy owes them. So your response, which I have some sympathy for, is this isn't about net financial loss to the government. This is about sort of corruption within a government unit and that's a matter of public concern. Precisely, your honor, and it is both a concern for the union in the intra-union politics because Captain O'Loughlin was running as a reform candidate. The title of his campaign was make the union great again and he was saying... It's original. Reagan, Trump, O'Loughlin. Right, and he was saying, you know, there is no transparency here. You know, I won't do this kind of stuff. I won't do this behind your back. I mean, as I said before, this EVP, executive vice for them and the management is doing favors for him, giving him special treatment. Can I ask you another quick question just to make sure I've got my head fully around the separate claims in this case? I understand the free speech claim and what I'll call the pickering claim, I think, pretty well. The associational claim is a little trickier. Does the associational claim really add anything to the speech claim? I mean, it seems like what the Supreme Court has said is that the right of association exists to facilitate the exercise of other rights and so is there any, like, freestanding associational violation here or is this really a free speech case? I'm not asking you to give up on your assistance. I'm not trying to be coy, your honor, but I really think it's both. But even, this is, he is speaking as a private citizen. His job and Captain Little's job is not to do scheduling. They aren't complaining about their schedules. They're complaining about this breach of fiduciary duty. So I think that's, you know, I think that we have them speaking privately about an issue of public concern. It's number one. Number two, he is running to clean up the Union and the 11th Circuit has clearly held that organizing a union is a matter of public concern. The lady that was talking about the school buses and safety, that was held to be a matter of public concern. Whenever they punish somebody for advocating too strongly, the court slapped them down. You can't do that. Here, we have a, we have a union member who is running to take over this union and to change the way it operates, to make it transparent, not to be taking favors from the other side. So I get all that. It just sounds like, and again, I've got some sympathy with that argument, but that just sounds like speech, speech, speech, speech, speech. Where does the associational piece come in? I'm just trying to figure out. Because it's speech in the context of a union election and the courts have been very, very guarded of unions, saying that internal affairs can't investigate union discussions that aren't involved in infractions of some law, rule, or regulation. But I guess the reason I ask is that it's not really is it that your clients have been sort of like hampered or impeded in their ability to unionize, collectively bargain. I mean, they can still, I don't know, when I think of association, it's sort of like palling around, doing something together. They were impeded in changing, they were impeded in seeking to change the  And I dare to say, Mr. Amrong, the heart of your argument is a speech argument. Yes. No doubt that there's an associational component. But I want you to help me with the pickering factors which Judge Newsome referenced for you. Among the factors are these. We've talked a little bit about some of them. The first one is whether the declarant is speaking as a public employee or as a private citizen. That's not the one I want you to focus on for me for a moment. I want you to help me with the second part of the test, whether he's discussing a matter of public concern. As an abstract matter, it seems to me that you're dead right that a union member or a someone in a union seeking union office alleging corruption about an incumbent in union office is a matter of public concern. Stated at that high order of abstraction, I think that's clear. The problem I have is this. The test says, when we're talking about a matter of public concern or not, whether the employee's speech addresses a matter of public concern must be determined first by content, second by form, third by context. That's what the Supreme Court has told us. Help me with the form of the statement. What troubles me a little bit here is that the statement is made on a account disseminated only to limited members of the Facebook page created to promote the plaintiff's campaign. The only people who had access to that were basically his friends and supporters in the union. If I have this right, the public, the proposition that this union was led by corrupt officials, officials who violated their fiduciary duties. Yes, right. And I will answer that in two parts. Part number one, uh, it was addressed to his public to the rather numerous members of the local firefighters union. That was the, that was the public to whom he was addressing and they were fairly numerous. Number two, he did not wish, he did not wish to upset the general public. He didn't wish to draw attention to the general public. If he did, then the union, then the county would say, but he's tarnishing the reputation of the county fire department. He didn't want to do that, but he did want to communicate to the relevant public, those who would be voting. His following was, it may have been private, but it was fairly numerous. He was trying to say this to everybody in the union. The union is huge. Uh, it has all of the firefighters of Palm Beach County. What's the, what's the number? Does the record reflect how many members there are in this union who would have been able to vote in this union election for president? You know, I, I think it's over 1000. Uh, I'm not sure. Okay. I was just curious. I don't ask the question in a slightly different way. With the general public accepting as an abstract matter, corruption in union leadership is a matter of public concern. More particularly here, given the nature of the charge of the violation of fiduciary duty, it's not exactly as if he were tipping into the public till and stealing public money, or he was raiding a union pension fund. Would the general public have any real interest in Captain Newsom's leave taking practices? Is that really newsworthy or particularly newsworthy? When I was a reporter, I would have had this on the front page. If I had a union executive vice president getting special favors from the fire department, I consider that to be outrageous. And that's something that would be reported on the front page of the mining Herald. Gotcha. Last question. If with the, uh, approval of our presiding judge, because I'm taking you really over your your time and you're on our time rather than yours. But if I may just one final question, the Pickering balancing test. Supreme Court tells us that what we have to do is we have to balance the speech, the First Amendment interest against the fire department's interest in discipline and order. And here we're talking about a union in the context of a fire department, which has a a military quasi military component to it. How do we do the balancing? Seems to me, on the one hand, the union has the public has a real the fire department has a real interest in trying to maintain its good order and discipline. How does how do we balance here? That's why I began with a quote from Porter v. Califano about how it is absurd to permit public officials to discipline someone who says they're correct. Uh, the, uh, in Lieberman versus City of Petersburg, a Fourth Circuit case, uh, relying on the United States versus National Treasury Employment Union. Uh, the court, the court said that, yeah, you know, all of these restrictions are good, but if we enact, if we enact this, uh, rule that you're trying to do, which is very similar to the rule issue here, that will be the end of transparency in the government. Um, so generally that's the answer. Specifically, he was trying, he was attempting by not putting this on just the general Facebook page, not taking out billboards, but by directing this to the relevant public. Those persons were in the union and going to be voting. He wasn't trying to embarrass the entire department. There was, you know, there was one bad union officer and there was one very, at least, neglectful staffing officer who went along with him and gave him the time off. Uh, that, um, I don't believe that that, uh, harmed Palm Beach County. Mhm. Got it. Thank you very much. Very well. You have your full rebuttal time remaining. Thank you very much. Thank you so much. All right, Miss Vis correct. May it please the court. My name is Helene Vis with the Palm Beach County Attorney's Office and I represent the appellee Palm Beach County. This case, the case in front of this court is Connick versus Myers. It's Connick versus Myers. 40 years after that case was decided by the United States Supreme Court. This is a first amendment free speech case. As some of the questions of this panel suggested briefly, Connick versus Myers was the ultimately by the D. A. She was prosecuting in a criminal department within the office. She was told she was going to be moved. She objected to that movement and then circulated a questionnaire throughout the office that contained questions about whether or not her co workers, her colleagues felt that perhaps they were not being supervised correctly. Whether there was some question about office morale, whether employees felt pressure to work in political campaigns. After her termination, she filed suit. She alleges that she was sued, that she was terminated rather because of exercising her first amendment right to free speech, which is what this case is about. This is not about associational conduct. Um, the court in Connick said that when an employer speaks not as a citizen on matters of public concern, but instead as an employee on matters only of personal interest, absent the most unusual circumstance, a federal court is not the appropriate forum to review the wisdom of those personnel decisions. Specifically, as to the court's analysis, the court found three things of significance. The questions in the in the questions in the questionnaire regarding the level of confidence the cleric carried the clear potential to undermine office relations. Second, the fact that she exercised her free, her first amendment right to speak supported the DA's, um, decision in this case because she specifically questioned his ability to run the office. She specifically questioned her, uh, ability to run the office. And lastly, her questionnaire emerged directly after her termination. What we have in this case is precisely those three facts. This record, context is everything, right? Content, form, and context. This record, the record before the district court, demonstrated that Captain O'Loughlin knew how to appropriately run for a union presidency. Page 3 39 of the record. A bulldog in your backyard. Vote A. J. O. Laughlin. He lays out a chart showing the differences between himself and the current incumbent. He does so without using vulgar ad hominem attacks. So let me just, let me just ask you sort of to get back to the question that Judge Marcus was asking your adversary. I mean, so are you disputing, as Judge Marcus said, at sort of the top line level as to content that an allegation of corruption in a governmental unit is not a matter of public concern? No, Your Honor. This is not, however, an allegation of corruption in a governmental unit when you look at the whole record. And that's the problem. The narrow little focus that you will for the trees. We need to understand A. J. O. Laughlin was arrested. This record shows you A. J. Excuse me. A. J. O. Laughlin was arrested in 2017. His amended and that's on his Facebook page. This whole entire face. Excuse me. That was on his web page. The entire web page was submitted to the district court by the county in its statement of facts attached to its summary judgment motion. So the district court had before it the arrest that occurred, which Captain O. Laughlin admits to on his web page. I was arrested. I owned it. And the first amended complaint tells us that A. J. O. Laughlin is on his fourth disciplinary action. One more disciplinary action and he will be terminated. So I spherics to you, I guess. But I mean, of what relevance is that? Is that his right or not right to speak about? Let's let's talk about corruption. It is or isn't corruption. But I don't see how his arrest record has anything to do with whether his allegations about somebody else's conduct or are or not corruption. I'm sorry, Your Honor. It has everything to do with it, because in response to his five day suspension, which the amended complaint tells us occurred following his arrest, he gets on Facebook and he posts slanderous, vulgar ad hominem attacks against the people who imposed that particular suspension. So you're just saying this is a vendetta, basically. Exactly. But I mean, so it sounds like then you might have sort of a reason to speak back or to, you know, to counter the allegations. But I'm not really sure that that disqualifies it from First Amendment protection. I'm not sure that takes it out of the matter of the category of a matter of public concern just because he's kind of like a bad motivation or something, right? But we have an additional fact, Your Honor. His Web page was presented to the public at large, not this private little group that he forms in an invitation only Facebook page. If you will, it was a water cooler on steroids. It was the ability for one individual to malign administration of the very paramilitary organization that he's sworn an oath to uphold to malign them amplified through the guys of conduct. I'm having a little bit of difficulty following the thrust of the argument. So let me go back to first principles. Pickering tells us we have to ask one whether he was speaking as a private citizen or a public employee. Why wasn't he speaking as a private citizen here rather than a public employee in the sense that the allegation that he leveled against Captain Newsome bore on by one take Newsome's fitness for for office rather than on any duties or responsibilities that the declarant had. Why wasn't he a private citizen? You agree that he was acting as a private citizen? It was a private citizen, Your Honor. When he made these when he made the question right, the talk about a map matter of public concern. Why wouldn't it be a matter of public concern to allege that a high ranking union official, the incumbent president of the union, had violated his fiduciary duties, even if he didn't steal from the public till. Basically the allegation, and that's all I would like you to help me understand the particular allegation, is that the incumbent officer wrongfully took union hours, which were given to him for a purpose of furthering union business. And he used it for his own benefit to it to take off a Friday after Friday or something like that. Why isn't the violation of fiduciary duty by a high ranking union official in the union of considerable importance dealing with a critical public service provided by the fire department of some public note? Your Honor, if those were the facts of this case, I might agree that would be of some public note. Those are not the facts of this case. Okay, so let's take a look at the actual posts themselves and the evidence that came out before the district court. There was no point when Captain Newsome used UTP for a holiday. What the record shows us is a screenshot that appears to be of Captain Newsome misusing this these UTP days. It seems to me as wholly beside the point whether whether he is correct about that allegation. Judge Marcus asked you to explain to him why the allegation is not a statement of about a matter of public concern. I understand the question. The statement is not a matter of public concern because you cannot redefine the public to include the few members of the Facebook page or the few members of the union who ultimately vote. The record doesn't tell us. Well, but but in fairness, right? I mean, the question is whether this is a matter of public concern, correct? And we look to content. And so we've been talking about content and if the allegation is one of corruption, rightly or wrongly, might be right about that might be wrong, but the allegation is one of corruption. That sounds like a matter of public concern insofar as content is concerned. And then maybe you're talking about form or context that this was done in a quasi private invitation only forum. But I'm not I don't know why that would disqualify speech from protection on a matter of public concern. I mean, like if you sent a text message, you know, sort of accusing the president of the United States of high crimes and misdemeanors. Is that not a matter of public concern just because it's sent privately? That's inconceivable to me. We're not questioning whether or not there has been an allegation made by a private citizen. But the focus that this court needs to take is on the public. What do we consider the public? In all of your First Amendment cases, in all of the First Amendment cases throughout the federal courts, we focus on whether or not there's a claim of corruption in the expenditure of a school district's budget, whether or not there's a claim of corruption within the district attorney's office. You're talking about a branch of government that is alleged to have been corrupt. In this case, we have an unfounded charge. There was a theft of UTP. There wasn't. It was canceled. There was no theft of UTP that affects only the union members. We're going back and forth between two of the elements. One was he speaking as a public employer, as a private citizen, and the speech itself, whether it was on a matter of public concern. I guess putting it as sharply as I can to help me with this, does it lose its public character as a matter of public concern simply because you say, and you may be right, that the statement is false, indeed libelous? Has it lost its public character because you say it's false? No, that would not be a basis to determine that it has lost its public character. The reason it has no public concern is because the public cannot be concerned about an alleged theft that didn't occur, that had no impact on the public coffers. UTP is time that is donated after firefighters are granted that leave time. Do you mean, I'm just trying to figure out, it seems like you keep circling back as a defense to the truth or non-truth of the allegation. In my of high crimes and misdemeanors. It turns out that after some substantial investigation that the high crimes and misdemeanors were not committed or were not sufficiently serious to meet the constitutional threshold. What you're telling me is that that was never a matter of public concern. No, your honor. I'm not saying that. I'm sorry if it appears as if I am circling back to the truth or falsity of it. I really don't want the court to was a vengeful act on the part of someone who had been suspended for five days. He knew how to associate in the union and he did that appropriately on his webpage, but in this private little water cooler on steroids invite room, he slanders, he accuses people of theft that didn't occur, etc. I mean, that's the context in its entirety. The reason in this case that this is not a matter of public concern is because there is not an accusation of corruption. That was not part of the Facebook posts. That is an after the fact creation that has taken place while this case is on appeal. That is similar to a case in front of this court where the your ad hominem attacks by suggesting that there is a basis for this piece. I may have, I want, I need you to help me with this because I may have misunderstood the critical facts. I thought this complaint in this lawsuit is about the fact that the plaintiff made an accusation on a private face page about what he characterizes as a violation of the fiduciary duties. Didn't all of that happen before the complaint was leveled? Yes, your honor. Okay, so just temporarily that happened first. The complaint came later, right? The filing of the amended complaint came after, right? Okay, let me ask you a question. I'm speaking for myself. The most powerful argument you have here is when we get to the third part of the Pickering test and we asked about the balancing of the fire department's interest in regulating the declarant speech against their interest in the good order and discipline of a quasi military kind of institution. Could you help me with that? How does this affect, if you will, the discipline and the order of the fire department in Palm Beach? Your honor, as we argued in our answer brief, this court has consistently held that quasi military organizations have an increased need to maintain trust among their firefighters and the public. The public is allowing these individuals into their homes. The public is placing their lives in the hands of these individuals. An accusation that management cannot be trusted, which is what this Facebook page, Vengeful Vulgar Ad Hominem Attacks, stated, I don't trust him. I'm keeping my locker closed. You all should too as well, is exactly the kind of accusation that hampers the fire, that diminishes, perhaps entirely, fire rescue's ability to maintain that trust with the public and among firefighters. That's exactly the same circumstance that occurred in Connick and that was one of the bases that the U.S. Supreme Court said, we can't question this after the fact. When we see the damage that this has done, Captain Newsome immediately wrote his letter, immediately was harmed, felt the harm, felt the dissension within this paramilitary organization vital to the lives of the citizens in Palm Beach County, vital to their health. Can I ask you just one follow-up question on this? I know we've held you over. Did the district court proceed in the Pickering analysis beyond the very first factor about whether or not this was a matter of public concern? Did the district court get into all this disruption stuff and whether or not the speech interests outweighed the managerial interests? If not, should we go there? Shouldn't the district court . . . or the motion to dismiss about the importance of having that kind of trust and camaraderie in a paramilitary organization, the kind of respect for administration and management, but I don't believe that issue was thoroughly researched or thoroughly analyzed by the district court. The district court noted the I, me, we, how this was a personal attack by Captain O'Loughlin against Captain Newsome. Got it, okay. Thank you. Could I ask one quick question? The staffing officer who's mentioned in some of the posts, is that a county employee, a union official? What is the role of that person? Definitely a county employee. We are not told by this record whether that individual is a union official as well. Okay, because I mean in terms of when we're getting beyond the union in terms of allegations of improper conduct, then the level of public interest may rise if that's a non-union person acting in that capacity and the idea that the union officials have cozied up to part of the county administration, that's why I wondered about that. Thank you. Thank you. Mr. Amlong, you've got your rebuttal time remaining. Good story. To answer your question, the staffing officer, I don't know him personally, but 99 percent, he is a union member because it goes up through captains. Captain Little, when she was a captain, was the staffing officer, but the staffing officer is a management employee, but union membership in Palm Beach goes up through the rank of captain. Can I ask you, I didn't mean to step on your answer if you hadn't completed. I've completed with you on a question that I began to ask Ms. Vees and Judge Newsom followed up. We were talking about the Pickering test and there are a number of parts to it. One, was he speaking as a private citizen or as a public employee? Two, was this a matter of public concern, the nature of the speech, the content, the form, the context? We spend most of our time talking about that. The district court grants judgment really on the first two factors, focusing mainly on public concern. If the district court was wrong about that as a matter of law, would it be appropriate for this court to then go to the third step and do the balancing ourselves, or should that more probably go back to the district court to be done since, in many ways, although it's a legal question, it's probably more accurately a mixed question of law and fact. What I'm asking is, should that matter be remanded back to the district court assuming that you were otherwise right about the first two Pickering factors? Judge Marcus, they have conceded today that he was speaking as a private citizen, so we're left with the issue of whether it's a matter of public concern. This is not iconic where you had an assistant state attorney who was bent out of shape because she didn't get a promotion or got the wrong assignment and was doing this to be vengeful. Here, there was no revenge that he was seeking. I have to admit . . . Can I just stop you because I want Judge Marcus to get an answer to the question because I'm threshold question. Speaking as a private citizen or public employee, everybody here agrees private citizen. Check. Now we get into this four-factor Pickering test. The first is, is this a matter of public concern? We've been debating that. Judge Marcus says, if you win that and we say, yeah, this was a matter of public concern, the district court was wrong. Second factor, the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities. That's where the balancing begins. District court really didn't do that because it said you lose the threshold at the step one. If we disagree and we say, this was a matter of public concern, Judge Marcus wants to know, and I want to know, whether we should go ahead and do the balancing and do this speech interest versus managerial interests or should we remand that to the district court? I'd like you to do it, but I'm not sure that you can. You want to see how much momentum you've got? I'm not sure that you can because it wasn't decided. However, this is a motion for summary judgment. It wasn't just a motion to dismiss. They presented no evidence whatsoever that this outweighed, that his behavior was so disruptive. I guess at some level, it dawns on me that the arguments cut both ways because to the extent that this was in a private invitation-only Facebook page, that probably on balance tends to make it somewhat less disruptive than if it was a Times Square billboard or whatever. It's completely undisruptive. Also, I really wasn't prepared to discuss vengeance, but it's been brought up here today, and that is frankly to quote Califano v. Porter or Porter v. Califano, absurd. That was your mic drop moment right there, just as the light goes red. Yeah. No, you can finish. No, I mean that was Captain Newsom had nothing to do with Captain Rockland's arrest. But do I take it, Mr. Amrong, that you agree, going back to the question I asked, and that Judge Newsom followed up with, that if we were to conclude that you were right and the district court was wrong on whether the speech concerned a matter of public import, public concern, I take it you agree the balancing itself ought to be done in the first instance by the position on that? I cannot honestly argue that I think that you should do it because I think that the way the pleadings were framed, I think the way the district court's order was framed, that that issue is not before this court. I'm prepared to address it because whenever you have First Amendment case, I'm not going to come up here and say, gee, I forgot to research that part or I didn't address that part. But candidly, I don't think it's before the court. I wish it were. I thank you so much for your straight and candid answer to me. Hey, Marcus, thank you so much. Very good. Thank you both. Well argued on both sides. We appreciate the help. We'll submit that case. Move to the second case.